IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER B. SCOTT, Plaintiff, | : | PRISONER CIVIL RIGHTS 42 U.S.C. § 1983 |
| v. | : | |
| THOMAS E. BROWN, et al., Defendants. | : | CIVIL ACTION NO. 1:11-CV-2514-TWT-JFK |

**MAGISTRATE JUDGE'S**
**NON-FINAL REPORT AND RECOMMENDATION**

Plaintiff, Christopher B. Scott, confined in the Henry County Jail in McDonough, Georgia, has submitted a *pro se* civil rights complaint against DeKalb County and various officials. By separate Order Plaintiff was granted *in forma pauperis* status, and the matter is before the Court on Plaintiff's amended complaint, (Doc. No. 13), for screening under 28 U.S.C. § 1915A, and on Plaintiff's motion for a temporary restraining order, (Doc. No. 12).

## I. 28 U.S.C. § 1915A Standard

Pursuant to 28 U.S.C. § 1915A, a federal court is required to conduct an initial screening of a prisoner complaint against a governmental entity, employee, or official to determine whether the action: (1) is frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1) & (2). A claim is frivolous

when it "lacks an arguable basis either in law or in fact." Miller v. Donald, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal quotation marks omitted) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555.

In reviewing whether a plaintiff has stated a claim, the court presumes the truth of a plaintiff's non-frivolous factual allegations, construing them favorably to the plaintiff. See Sibley v. Lando, 437 F.3d 1067, 1070 (11th Cir. 2005); see also Denton v. Hernandez, 504 U.S. 25, 33 (1992) (discussing court's authority to disregard frivolous factual allegations). Further, the court holds *pro se* pleadings to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007). "Courts do and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education. . . . Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, . . . or to rewrite an otherwise deficient pleading in order to sustain an action[.]" GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (citations

AO 72A
(Rev.8/82)

omitted), overruled on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010). A plaintiff must allege facts sufficient to show a recognized legal claim, and the court cannot read into a complaint non-alleged facts. Beck v. Interstate Brands Corp., 953 F.2d 1275, 1276 (11th Cir. 1992).

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that (1) a person acting under color of state law (2) deprived him of a right, privilege, or immunity secured by the Constitution or federal law. Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of his claim or claims, then the complaint is subject to dismissal. See Chappell v. Rich, 340 F.3d 1279, 1282-84 (11th Cir. 2003) (affirming the district court's dismissal of a § 1983 complaint because the plaintiffs' factual allegations were insufficient to support the alleged constitutional violation); see also 28 U.S.C. § 1915A(b) (dictating that a complaint, or any portion thereof, that does not pass the standard in § 1915A "shall" be dismissed on preliminary review).

## II. Discussion

Plaintiff brings this § 1983 action – on behalf of all future Muslims detained in the DeKalb County Jail (hereinafter DeKalb County Jail or the Jail) – against DeKalb County and against Sheriff Thomas E. Brown, Corporal Gowdy, and Burrel Ellis, CEO

AO 72A
(Rev.8/82)

of DeKalb County, in their individual and official capacities. (Doc. No. 13).[1] Plaintiff complains that Defendants are violating his First and Fourteenth Amendment rights and his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). (Id., VI at 1). Plaintiff presents seven claims, briefly outlined here and more fully presented below – (1) failure to retain a Muslim chaplain as well as a Christian chaplain; (2) failure to provide Qurans out of allotted governmental funds in the same manner that Bibles are provided; (3) not allowing him to wear his pants cuffed or rolled, in disregard of the Muslim requirement that he wear his pants above his ankles; (4) not allowing him to wear a kufi although other religions are allowed special headwear; (5) not providing him a secure place for praying although a secure place is provided for the Christian religion; (6) not providing a special end-of-Ramadan meal although special meals are provided for other religious holidays; and

[1]Plaintiff's December 2011 amended complaint replaces and supersedes his July 2011 original complaint, (Doc. No. 1), and his September 2011 amendment (titled Brief on Amended Complaint), (Doc. No. 8). (See Doc. No. 11 at 1-3); see also Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007) ("Under . . . federal law, an amended complaint supersedes the initial complaint and becomes the operative pleading in the case."). Matters referred to in other documents and that are not clearly set out in Plaintiff's December 2011 amended complaint are *not* deemed claims in this action. It is noted that Plaintiff has attached a copy of his September 2011 amendment and sometimes refers to it in his December 2011 amended complaint. Because the Court instructed Plaintiff that his amended complaint would supersede and replace his original complaint and his September amendment, the copy of his September amendment is deemed to have been submitted for informational purposes only, with the limited exceptions that are noted *infra* at note 3.

AO 72A
(Rev.8/82)

(7) Corporal Gowdy punished him for rolling his pants up, as required by his religion.[2] (Id. at 2-10). Plaintiff contends that Sheriff Brown is responsible because he sets the policies and is the moving force behind the alleged violations and that Mr. Ellis is responsible because Sheriff Brown is employed under Mr. Ellis. Plaintiff seeks damages and injunctive relief.[3] (Id. at 10).

## A. Action Brought on Behalf of Others

Plaintiff's attempt to bring an action on behalf of all other Muslims who may enter the DeKalb County Jail fails because it is "plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action." Wallace v. Smith, 145 F. App'x. 300, 302 (11th Cir. 2005) (alteration in original) (internal quotation marks omitted) (quoting Oxendine v. Williams, 509 F.2d 1405,

[2]Plaintiff also infers that the Jail's grievance procedure does not satisfy due process. (Doc. No. 13, VI at 10). However, a prisoner has no independent constitutional right to the provision of, or proper functioning of, a prison's administrative remedy program. Dunn v. Martin, 178 F. App'x 876, 878 (11th Cir. 2006) ("We agree with other circuits that have decided that a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure."). To the extent Plaintiff intended to raise a claim regarding grievance procedures, it fails, and the matter is not further addressed.

[3]Plaintiff refers to his September 2011 amendment in asserting Jail custom and policy for which Sheriff Brown and Mr. Ellis are responsible. (See Doc. No. 8 at cm/ecf pages 19-21). Plaintiff also refers to his September 2011 amendment in regard to the relief he seeks. (See id. at cm/ecf page 28). Those limited pages are construed to be included in Plaintiff's December 2011 amended complaint.

AO 72A
(Rev.8/82)

1407 (4th Cir. 1975), and citing Massimo v. Henderson, 468 F.2d 1209, 1210 (5th Cir.1972)).

**B. Burrel Ellis**

"[L]iability under § 1983 may not be based on the doctrine of respondeat superior." Craig v. Floyd County, 643 F.3d 1306, 1310 (11th Cir. 2011) (alteration in original) (internal quotation marks omitted) (quoting Grech v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir. 2003)). A supervisor is liable for the actions of his subordinates under § 1983 only "if he personally participates in the act that causes the constitutional violation or where there is a causal connection between his actions and the constitutional violation that his subordinates commit." AFL-CIO v. City of Miami, 637 F.3d 1178, 1190 (11th Cir. 2011).

Mr. Ellis must be dismissed. The fact that Sheriff Brown is employed under Mr. Ellis is insufficient to hold Mr. Ellis liable, and Plaintiff otherwise alleges no facts that connect Mr. Ellis with the alleged wrongs. See Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008) ("[A] complaint will be held defective . . . if [it] fails to connect the defendant with the alleged wrong." (alterations in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1234, at 381-85 (3d ed. 2004))).

AO 72A
(Rev.8/82)

### C. <u>DeKalb County</u>

To succeed on a claim against a county, the plaintiff must identify a *county* custom or policy that caused the alleged deprivation. Grech, 335 F.3d at 1329. The identification of a county/municipality policy "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004) (internal quotation marks omitted) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997)). In Georgia, a "sheriff's office is not a division or subunit of [a c]ounty or its county governing body, and, thus, it is not a structural part of [a c]ounty government." Manders v. Lee, 338 F.3d 1304, 1310 (11th Cir. 2003). A Georgia sheriff "functions as an arm of the State-not of [the] County-when promulgating policies and procedures governing conditions of confinement at the . . . County Jail." Purcell ex rel. Estate of Morgan v. Toombs County, 400 F.3d 1313, 1325 (11th Cir. 2005). A county is not liable for a sheriff's actions that are taken on behalf of the State. Manders, 338 F.3d at 1313 n.18.

Petitioner has alleged that Sheriff Brown is the policy maker for the DeKalb County Jail and seeks to hold DeKalb County liable. The County, however, cannot be held liable based on Sheriff Brown's policy making because Sheriff Brown does not

AO 72A
(Rev.8/82)

act for the County in administering the DeKalb County Jail. Rather, he acts for the State.

**D. Injunctive Relief**

Plaintiff's claims for injunctive relief must be dismissed as such claims become moot when a prisoner is transferred to a different facility, and Plaintiff has been transferred from the DeKalb County Jail and is now confined in the Henry County Jail. See Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007) ("The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief."), abrogated on other grounds by Sossamon v. Texas, _ U.S. _, _, 131 S. Ct. 1651, 1657 n.3 (2011)).[4]

**E. RLUIPA**

Under RLUIPA, prison officials may not substantially burden the free exercise of religion unless they use (1) the least restrictive means (2) to further a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). To state a RLUIPA claim, a plaintiff must allege facts showing (1) that he engaged in a religious exercise and (2) that his religious exercise was substantially burdened. Smith, 502 F.3d at 1276. "RLUIPA creates an express private cause of action for injunctive and declaratory relief against the government, which includes 'States, counties, municipalities, their instrumentalities

[4]The additional propositions from Smith, stated further below, also were not abrogated by Sossamon.

AO 72A
(Rev.8/82)

and officers, and persons acting under color of state law.'" Gardner v. Riska, No. 11-10272, 2011 WL 4389709, at *2 (11th Cir. Sept. 22, 2011) (quoting Sossamon, 131 S. Ct. at 1656). RLUIPA does not create a private action for monetary damages against officials sued in their individual capacity. Smith, 502 F.3d at 1275. RLUIPA also does not allow damage claims against state officials sued in their official capacity. See Sossamon, 131 S. Ct. at 1663.

Here, Plaintiff's RLUIPA claims fail. Plaintiff's RLUIPA based damage claims fail because the only possible Defendant, Sheriff Brown, is not liable for damages in his official capacity (acting for the state)[5] or in his individual capacity. Further, as indicated above, Plaintiff's RLUIPA claims for injunctive relief fail because he has been transferred. See Hathcock v. Cohen, 287 F. App'x 793, 798-99 (11th Cir. 2008) (holding that RLUIPA claims for equitable relief became moot when the plaintiff is transferred to another correctional facility).

**F. Claims One - Six**

In his First Claim, Plaintiff complains that the Jail retains a paid Christian chaplain, but not a paid Muslim chaplain. Plaintiff contends that the lack of a Muslim chaplain affects matters such as his ability to marry and attend Juma service on Fridays and violates his right to equal protection. (Doc. 13, VI at 2-3). In his Second Claim,

---

[5]See infra II F 2.

AO 72A
(Rev.8/82)

Plaintiff complains that clergymen pass out copies of the Bible from allotted federal funds, that the Jail's library contains no copy of the Quran, and that copies of the Quran have to be donated. Plaintiff also states that 100 donated copies were passed out after August of 2011. (Id. at 4). In his Third Claim, Plaintiff contends that a tenet of his Muslim religion is to wear his pants above his ankles but that prison rules do not allow pants to be cuffed or rolled. Plaintiff also states that the Jail goes by the Department of Corrections policy that allows a prisoner to have his pants hemmed above his ankles. Plaintiff does not state in his complaint that officials have refused him the option of hemming his pants. (Id. at 5-6). In his Fourth Claim, Plaintiff complains that he is not allowed to wear a kufi although Jewish inmates are allowed to wear a yamaka. (Id. at 6). In his Fifth Claim, Plaintiff complains that he is not provided a secure – free from inmate traffic – place to pray five times a day although Christians are provided use of the multi-purpose room for Sunday prayer. (Id. at 6-7). In his Sixth Claim, Plaintiff complains that the Jail does not provide a special meal at the end of Ramadan although it provides special meals on Christmas Eve, Christmas, New Year's Eve, New Year's Day, Thanksgiving, Easter, July Fourth, Martin Luther King's birthday, and Labor Day. (Id. at 8).

### 1. First and Fourteenth Amendment

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The Equal Protection Clause of the Fourteenth Amendment forbids that a state "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. "The free exercise inquiry asks whether government has placed a substantial burden" on a sincerely held religious belief. Hernandez v. Comm'r of Internal Revenue, 490 U.S. 680, 699 (1989); Benning v. Georgia, 391 F.3d 1299, 1313 (11th Cir. 2004) ("[T]he First Amendment . . . requires Georgia to determine whether the asserted belief of an inmate making a Free Exercise claim is religious and sincerely held."); Levitan v. Ashcroft, 281 F.3d 1313, 1320 (D.C. Cir. 2002) (The Constitution does not "forbid[] all constraints on religiously motivated conduct, however trivial. Instead, the First Amendment is implicated when a law or regulation imposes a substantial, as opposed to inconsequential, burden on the litigant's religious practice."). In the context of prison life, officials may not impinge on the free exercise of a "sincerely held" religious belief unless their actions or restrictions are "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 345, 349 (1987) (internal quotation marks omitted) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). The reasonableness inquiry asks:

AO 72A
(Rev.8/82)

> (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an "exaggerated response" to prison concerns.

Hakim v. Hicks, 223 F.3d 1244, 1247-48 (11th Cir. 2000) (quoting Pope v. Hightower, 101 F.3d 1382, 1384 (11th Cir. 1996)).

Further, "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." Larson v. Valente, 456 U.S. 228, 244 (1982). The First and Fourteenth Amendments are violated by the denial of a "reasonable opportunity of pursuing [one's] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts[.]" Cruz v. Beto, 405 U.S. 319, 322 (1972).[6] Although "[v]alid disciplinary and security

---

[6]The court in Cruz noted,

> We do not suggest, of course, that every religious sect or group within a prison-however few in number-must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty.

Cruz, 405 U.S. at 322 n.2.

AO 72A
(Rev.8/82)

reasons not known to [the] court *may* prevent the 'equality' of exercise of religious practices in prison[,]" id. at 321 (emphasis added) (internal quotation marks omitted) (quoting Cruz v. Beto, 329 F. Supp. 443, 446 (S.D. Tex. 1970)), it is improper to dismiss a First/Fourteenth Amendment claim without any fact finding regarding the state's actual justification for the contested regulation or practice. Saleem v. Evans, 866 F.2d 1313, 1316-17 (11th Cir. 1989) ("We will not assume that the warden's interest in denying [the plaintiff] the opportunity to observe Ramadan in December was legitimate, compelling and substantial without any allegations or evidence to support such a finding." (quoting Diaab v. Green, No. 85-8351 (11th Cir. June 11, 1986))). The Eleventh Circuit has cautioned – "[b]ecause a court holds that certain prison officials demonstrated a substantial interest justifying interference with a certain religious practice at a certain institution at a certain time, does not logically compel us to conclude that an inmate who alleges interference with the same practice at a different institution at a different time has failed to state a claim under the First Amendment." Saleem, 866 F.2d at 1317 (quoting Diaab).

For the purpose of preliminary review, the sincerity of Plaintiff's religious beliefs are accepted. However, Plaintiff's Second Claim regarding the provision of a Quran fails because he does not show that the Jail's actions have substantially burdened his religious practice or that he lacks a reasonable opportunity of pursuing

AO 72A
(Rev.8/82)

his faith in a manner comparable to the opportunity provided to prisoner's who adhere to the precepts in the Bible. Although only Bibles were purchased from Jail funds, Plaintiff states that 100 Qurans were donated and passed out, and there is no indication that Plaintiff has been denied access to a donated Quran. Plaintiff's Third Claim regarding the length of his pants also fails because he does not show that forbidding him to role his pants places a substantial burden on his religious practice. It appears that Plaintiff has the option of having his pants hemmed, and he does not state in his amended complaint that he has been refused that option.

However, for the purpose of preliminary review, the Court accepts that lack of a Muslim chaplain (Claim One), not being allowed to wear a kufi (Claim Four), failure to provide secure places to pray as required by his religion (Claim Five), and not being allowed to celebrate an end-of-Ramadan meal (Claim Six) either show a sufficient burden on his sincere religious beliefs or show a lack of reasonable opportunity to pursue his faith in a manner comparable to the opportunities provided other religions. Although prisons need not employ chaplains of every faith, any discrimination against a particular faith must be justified by prison administration needs, which are not known at this time for the DeKalb County Jail. See Johnson-Bey v. Lane, 863 F.2d 1308, 1312 (7th Cir. 1988) (holding that prisons need not provide chaplains of all faiths but that they "may not discriminate against minority faiths except to the extent required by

AO 72A
(Rev.8/82)

the exigencies of prison administration"). Although court's have upheld no-headwear policies as reasonably related to legitimate prison concerns, Shepard v. Peryam, 657 F. Supp. 2d 1331, 1349 n.4 (S.D. Fla. 2009) (listing cases), the DeKalb County Jail's concerns are unknown and, further, Plaintiff alleges that the Jail allows headgear for at least one other religion. Likewise, the Jail's administrative and security concerns in regard to Plaintiff's prayer and Ramadan needs are not known at this time.

**2. Sheriff Thomas E. Brown**[7]

As stated earlier, a supervisor is liable under § 1983 for his subordinates' actions "if he personally participates in the act that causes the constitutional violation or where there is a causal connection between his actions and the constitutional violation that his subordinates commit." AFL-CIO, 637 F.3d at 1190. To state a claim of supervisory liability, a prisoner must show that "the supervisor personally participate[d] in the alleged constitutional violation" or that "there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal quotation marks omitted) (quoting Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)). A causal connection is shown if (1) the supervisor is on notice of historical widespread abuse and has not

[7]The undersigned already has recommended that DeKalb County and Mr. Ellis be dismissed. Further, Claims One through Six fail as to Corporal Gowdy because in those claims Plaintiff alleges no facts against Corporal Gowdy. Sheriff Brown is the only Defendant who remains potentially liable for Claims One through Six.

AO 72A
(Rev.8/82)

taken corrective action, (2) the supervisor has a custom or policy that resulted in the alleged violation, or (3) "facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." Id. (citing Cottone, 326 F.3d at 1360). Further, a Georgia sheriff possesses Eleventh Amendment immunity to § 1983 official-capacity damage claims based on his role in "establishing and administering jail policies and practices," in which role he "functions as an arm of the State of Georgia." Purcell, 400 F.3d at 1324.

Plaintiff's allegations that Sheriff Brown sets the policies that are the moving force behind the violations is sufficient, on preliminary review, to show that Sheriff Brown is liable as a supervisor. However, it is recommended that Plaintiff's official-capacity damage claims against Sheriff Brown be dismissed based on Eleventh Amendment immunity. Accordingly, Plaintiff's First and Fourteenth Amendment individual-capacity damage claims – on Claims One, Four, Five, and Six – should be allowed to proceed against Sheriff Brown.

**F. Claim Seven**

In his Seventh Claim, Plaintiff complains that Corporal Gowdy locked him down for having his pants rolled up, in violation of Jail policy, and forcefully unrolled his pant legs. (Doc. 13, VI at 9-10).

To state a First Amendment retaliation claim under § 1983, a plaintiff must allege: (1) a constitutionally protected speech or practice, (2) an adverse action that "would likely deter a person of ordinary firmness from engaging in such speech" or practice, and (3) a "causal relationship between the retaliatory action and the protected [practice]." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Here, Plaintiff contends that wearing pants above his ankles is a constitutionally protected religious practice. However, in light of the possibility of having one's pants hemmed, Gowdy's requiring a prisoner's pants to remain unrolled does not present a significant deterrent to the religious practice of wearing pants above one's ankles. Accordingly, Plaintiff fails to state a retaliation claim against Gowdy.

## III. Motion for Temporary Restraining Order

Plaintiff complains that Gowdy disciplines and harasses him for wearing his pants rolled up and that he does so in retaliation for Plaintiff having filed grievances[8] and because Plaintiff believes in Allah. Plaintiff seeks a preliminary injunction and temporary restraining order, under Fed. R. Civ. P. 65(b), against Gowdy.

---

[8] In his amended complaint, see supra note 1, Plaintiff does *not* raise a claim against Gowdy alleging that he retaliated against him for filing grievances. (See Doc. No. 13, VI at 9-10).

AO 72A
(Rev.8/82)

A temporary restraining order (TRO) or preliminary injunction under Fed. R. Civ. P. 65 is not appropriate unless the movant has demonstrated to the court that

> (a) there is a substantial likelihood of success on the merits;
>
> (b) the TRO or preliminary injunction is necessary to prevent irreparable injury;
>
> (c) the threatened injury outweighs the harm that the TRO or preliminary injunction would cause to the non-movant; and
>
> (d) the TRO or preliminary injunction would not be averse to the public interest.

Parker v. State Bd. of Pardons and Paroles, 275 F.3d 1032, 1034-35 (11th Cir. 2001).

It is recommended, in accord with the discussion above, that Plaintiff does not show a substantial likelihood of success on the merits of his claim against Gowdy, that he does not show a threat of irreparable injury, and that his motion should be denied.

## IV. Conclusion

For the reasons stated above,

**IT IS RECOMMENDED** (1) that Corporal Gowdy, DeKalb County, and Burrel Ellis **BE DISMISSED**; (2) that all claims raised on behalf of others; all claims for injunctive relief; Claims Two, Three, Seven, and all RLUIPA claims; and all official-capacity damage claims against Sheriff Brown **BE DISMISSED**; and (3) that Plaintiff's motion for a temporary restraining order, (Doc. No. 12), **BE DENIED**.

AO 72A
(Rev.8/82)

**IT IS RECOMMENDED**, on Claims One, Four, Five, and Six, that Plaintiff's First and Fourteenth Amendment individual-capacity damage claims **BE ALLOWED TO PROCEED** against Sheriff Brown.

**IT IS FURTHER RECOMMENDED**, upon the adoption of this Report and Recommendation, that this action be returned to the undersigned for further proceedings, including the issuance of an Order regarding service of process.

**IT IS SO DIRECTED and RECOMMENDED** this 31st day of January, 2012.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)