**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER B. SCOTT, | : | PRISONER CIVIL RIGHTS |
| Plaintiff, | : | 42 U.S.C. § 1983 |
| | : | |
| v. | : | |
| | : | |
| THOMAS E. BROWN, | : | CIVIL ACTION NO. |
| Defendant. | : | 1:11-CV-2514-TWT-JFK |

**UNITED STATES MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

The matter is before the Court on Defendant's motion for summary judgment, (Doc. 35), and Plaintiff's response, (Doc. 40). For the reasons stated below, the undersigned recommends that Defendant's motion be granted in part and denied in part.

**I.    Background**

Plaintiff filed this action complaining that his constitutional rights were violated during his stay at the DeKalb County Jail from November 1, 2010, through December 3, 2011. (Docs. 1, 13; see also Doc. 40 at unnumbered page 11). The Court previously summarized Plaintiff's claims as follows.

In his First Claim, Plaintiff complains that the Jail retains a paid Christian chaplain, but not a paid Muslim chaplain. Plaintiff contends that the lack of a Muslim chaplain affects matters such as his ability to marry and attend Jum[mah] service on Fridays and violates his right to equal protection. (Doc. 13, VI at 2-3). . . . In his Fourth Claim, Plaintiff

complains that he is not allowed to wear a kufi[1] although Jewish inmates are allowed to wear a yamaka.  (Id. at 6).  In his Fifth Claim, Plaintiff complains that he is not provided a secure – free from inmate traffic – place to pray five times a day although Christians are provided use of the multi-purpose room for Sunday prayer.  (Id. at 6-7).  In his Sixth Claim, Plaintiff complains that the Jail does not provide a special meal at the end of Ramadan although it provides special meals on Christmas Eve, Christmas, New Year's Eve, New Year's Day, Thanksgiving, Easter, July Fourth, Martin Luther King's birthday, and Labor Day.  (Id. at 8).

(Doc. 15 at 9-10).  For the purpose of preliminary review, the Court accepted the

sincerity of Plaintiff's religious beliefs and found that

lack of a Muslim chaplain (Claim One), not being allowed to wear a kufi (Claim Four), failure to provide secure places to pray as required by his religion (Claim Five), and not being allowed to celebrate an end-of-Ramadan meal (Claim Six) either show a sufficient burden on his sincere religious beliefs or show a lack of reasonable opportunity to pursue his faith in a manner comparable to the opportunities provided other religions.  Although prisons need not employ chaplains of every faith, any discrimination against a particular faith must be justified by prison administration needs, which are not known at this time for the DeKalb County Jail.  See Johnson-Bey v. Lane, 863 F.2d 1308, 1312 (7th Cir. 1988) (holding that prisons need not provide chaplains of all faiths but that they "may not discriminate against minority faiths except to the extent required by the exigencies of prison administration").  Although court's have upheld no-headwear policies as reasonably related to legitimate prison concerns . . . the DeKalb County Jail's concerns are unknown and, further, Plaintiff alleges that the Jail allows headgear for at least one other religion.  Likewise, the Jail's administrative and

---

[1]A close-fitting brimless cap worn by certain Muslims.

2

security concerns in regard to Plaintiff's prayer and Ramadan needs are
not known at this time.

(Id. at 14-15).  Plaintiff was allowed to proceed against Sheriff Thomas E. Brown on

his individual-capacity damage claims One, Four, Five, and Six.   (Id. at 19).

Defendant Brown moves for summary judgment on the grounds that Plaintiff has not

exhausted his administrative remedies and on the merits of Plaintiff's claims.  (Doc.

35).

## II.   **The Motion for Summary Judgment**

### A.   **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment,

the court views the evidence in the light most favorable to the nonmoving party.  See

Konikov v. Orange Cnty., Fla., 410 F.3d 1317, 1321 (11th Cir. 2005).  The moving

party "bears the burden of identifying 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrates the absence of a genuine issue of material fact."  Mann v. Taser

Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (quoting Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986)).  "If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied . . . ."  <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993).

**B.    <u>Lack of Exhaustion</u>**

**1.    <u>Background</u>**

The record shows that Plaintiff submitted the following grievances and responses:

1.    grievance G115363 (concerning paid Muslim chaplain) and response, case number G040757, (Doc. 1, Ex. A);
2.    grievance G115954 (concerning paid Muslim chaplain) and response, case number G041113, (<u>id.</u>, Ex. B);
3.    grievance G116533 (concerning secure place to pray)[2] and response, case number G041217, (<u>id.</u>, Ex. C);
4.    grievance G116871 (concerning secure place to pray and paid Muslim chaplain, sent to Sheriff) and response, case number G041465, (Doc. 40, Ex. D #4);
5.    grievance G116873 (concerning secure place to pray, sent to Sheriff), (Doc. 1, Ex. H);
6.    grievance G117179 (concerning secure place to pray) and response, case number G041558, (Doc. 40, Ex. E #5);
7.    grievance G117660 (concerning meal to commemorate the end of Ramadan, signed June 23, 2011), (Doc. 1, Ex. E);

_____

[2]In his grievances concerning a place to pray, Plaintiff (1) complained that he had been ordered to come down from the mezzanine level where he was praying and that a place to worship had been provided to other religions (including offering "the Christian a secured place in the multipurpose room every Sunday"), but not to Muslims, and (2) requested a secure or suitable place for he and other Muslims to pray. (Doc. 1, Exs. C, H; Doc. 40, Ex. D #4).

4

8.    grievance G118489 (concerning special Ramadan meal, wearing kufi, place to pray, and paid Muslim chaplain, signed September 6, 2011) and response, case number G042215, (Doc. 40, Ex. H #8 and #9).[3]

Plaintiff contends in his complaint that he made every effort to exhaust his administrative remedies and that officials did not comply with their own procedures. (Doc. 13, Br., Chap. 4 ¶ 1).  Plaintiff appears to contend that although his grievances G115363 (Muslim chaplain), G115954 (Muslim chaplain), and G116533 (place to pray), were answered, the answers were late and not in accordance with the prison's own grievance rules.  (Id. ¶¶ 2, 3).  Plaintiff contends that his other grievances were ignored.[4]  (Id. ¶¶ 3, 4).  Plaintiff also states that there are no forms on which to appeal and that Officer Mattox, when asked, informed him that the appeal forms were not available.  (Id. ¶ 8).

---

[3]Plaintiff also has provided copies of, or referred to, grievance numbers G116875, (Doc. 1, Ex. G), G117662 and G117663, (Doc. 40, Ex. G #7), G118486, (id., Ex. H #8), and G118897 and G118898, (Doc. 13, Exs. 1, 2).  Those grievances do not pertain to the claims that are proceeding and are not further addressed.

[4]Plaintiff's grievances G117660 (concerning meal to commemorate the end of Ramadan) and 116873 (concerning secure place to pray, sent to Sheriff) do not appear to have been answered.  (See Doc. 1, Exs. E, H).

### 2.    Defendant's Statement of Undisputed Facts and Argument

Defendant states that it is undisputed that the DeKalb County Jail grievance procedures consist of (1) the inmate submitting a grievance form and an officer providing a written response within fifteen days, (2) the inmate appealing to the Division Commander within fifteen days if he is not satisfied with the response and the Division Commander responding to the appeal within fifteen days, and (3) the inmate appealing to the Sheriff within fifteen days if he is not satisfied with the response and the Sheriff responding to the inmate within thirty days.  (Doc. 35, Defendant's Statement of Undisputed Material Facts ¶ 2 and n.2; see also Doc. 4, Inmate Handbook at 33-34).  Defendant states that it is undisputed that Plaintiff submitted grievances concerning a paid Muslim chaplain, a secure place to pray, and an end-of-Ramadan meal – as listed in 1. through 4. and 6. and 7. above.  (Doc. 35, Defendant's Statement of Undisputed Material Facts ¶ 4).  Defendant states that it is undisputed that Plaintiff admits that he did not fully proceed through the jail's grievance procedures and that Plaintiff has argued that he was prevented, or otherwise excused, from doing so.  (Id. ¶ 5).

Although omitted by Defendant in his statement of undisputed facts, the grievance rules require an inmate to submit a grievance on the proper form within

fifteen days of the date on which the basis for the complaint occurred. Grievances that are not filled out on the proper form or timely submitted will be returned unanswered (unless a sensitive complaint is involved). (Doc. 4, Inmate Handbook at 34). The handbook specifies that an inmate is to use an "Inmate Grievance Form" at the first level, an "Inmate Grievance Form (appeal)" at the second level, and an "Inmate Grievance Form (final appeal)" at the final level. (Id.).

Defendant argues that Plaintiff did not submit any grievance on not being allowed to wear a kufi and that his June 23, 2011, grievance on not being provided an end-of-Ramadan meal was prematurely submitted before the July 31, 2011, commencement of Ramadan. (Doc. 35, Br. at 3 and n.3). Defendant argues that Plaintiff never completed the grievance process on his grievances concerning a paid Muslin chaplain and a secure place to pray. (Id.). Defendant asserts that the alleged lack of an appeal grievance form is not an excuse when Plaintiff did not even attempt to appeal on, "for example, the bottom or back of the initial Grievance form, a fresh Grievance form, or a blank sheet of paper." (Id. at 4).

### 3.  **Plaintiff's Response**

In reply, Plaintiff again states that there were no appeal grievance forms available and further states that the grievance rules require the use of the proper form

7

and warn the inmate that failure to use the proper form will result in a return of the grievance unanswered. (Doc. 40 at unnumbered pages 3-4). Plaintiff contends (1) that Ramadan began on August 1, 2011, and ended on September 1, 2011; (2) that neither his June 23, 2011, grievance G117660, or September 6, 2011, grievance G118489, concerning a Ramadan meal were answered; and (3) that he exhausted his administrative remedies on a Ramadan meal.  (Id. at 9).

## 4.   **Law and Recommendation**

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is a precondition to filing suit. McDaniel v. Crosby, 194 F. App'x 610, 613 (11th Cir. 2006) ("To the extent [plaintiff] relies upon the [administrative] grievances and appeals he submitted after filing his initial complaint, such grievances and appeals cannot be used to support his claim that he exhausted his administrative remedies, because satisfaction of the exhaustion requirement was a precondition to the filing of his suit, and, thus, must have occurred before the suit was filed."). Section 1997e exhaustion is mandatory, and lack of exhaustion requires dismissal. See Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004) ("A district

8

court must dismiss the suit when it finds that the plaintiff-inmate has not exhausted his administrative remedies.").

The Court decides lack of exhaustion in two steps. <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008). First, the Court should review the parties alleged facts – taking the plaintiff's version as true if the facts conflict – and should dismiss if review shows that the defendant is entitled to dismissal based on lack of exhaustion. <u>Id.</u> If dismissal is unwarranted at the first step, the Court should (1) resolve disputed facts that are relevant to exhaustion (bearing in mind that defendants bear the burden of proving lack of exhaustion) and, (2) based on its factual findings, decide whether exhaustion is satisfied. <u>Id.</u> at 1082-83. If exhaustion is shown to be lacking, it becomes the plaintiff's burden to show that administrative remedies were unavailable. <u>Albino v. Baca</u>, 697 F.3d 1023, 1031 (9th Cir. 2012); <u>Tuckel v. Grover</u>, 660 F.3d 1249, 1254 (10th Cir. 2011). A prison official's failure to respond to grievances or the prevention of the filing of grievances may render administrative remedies unavailable. <u>Bryant v. Rich</u>, 530 F.3d 1368, 1373 n.6 (11th Cir. 2008).

Although Defendant is incorrect in stating that Plaintiff did not file a grievance on wearing a kufi, Plaintiff did not file grievance G11849 (which mentioned wearing a kufi) until September 2011, after he filed this action. Thus, the pre-condition of

9

exhaustion was lacking for Plaintiff's claim concerning the wearing of a kufi.  See McDaniel, 194 F. App'x at 613; see also Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) ("The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint[, and] Smith's attempt to amend . . . did not change the important historical fact: his administrative remedies were unexhausted when he filed his original complaint.").  Grievance G117660, filed before Ramadan began in 2011, cannot serve to exhaust administrative remedies for a violation that has not yet occurred, and although Plaintiff filed grievance G118489 (mentioning a Ramadan meal) within fifteen days of the time during which an end-of-Ramadan meal could have been celebrated, that grievance had not been filed at the time Plaintiff filed this action.[5]  Thus, the pre-condition of exhaustion was lacking for Plaintiff's claim concerning the celebration of an end-of-Ramadan meal.  See McDaniel, 194 F. App'x at 613.

It is undisputed that Plaintiff did not complete the grievance process as to his claims concerning a paid Muslim chaplain and a secure place to pray.  Plaintiff,

_____

[5]In fact, based on the times provided by Plaintiff, the 2011 Ramadan season had not even commenced at the time Plaintiff filed this action on July 29, 2011.  (See Doc. 40 at unnumbered page 9).  The Court notes that Plaintiff's incarceration at the DeKalb County Jail began in November 2010, and the 2010 Ramadan season is not at issue.

10

however, asserts that exhaustion should be excused because he attempted in good faith to exhaust his administrative remedies but was prevented from doing so by the lack of proper forms.  Plaintiff has stated that the grievance rules required use of the proper appeal form and that there were no such forms available even though he enquired about them.  Defendant does not contest Plaintiff's statement but argues that Plaintiff could have appealed without the correct forms.  However, Defendant's bare assertion – that Plaintiff could have used part of an initial grievance form or a blank piece of paper for an appeal – (1) is not supported by the grievance rules which state that an inmate must use the proper form and then lists the appropriate forms for each step of the grievance process and (2) is not otherwise supported.

The undersigned finds that exhaustion is lacking on Plaintiff's claims regarding the wearing of a kufi and the provision of an end-of-Ramadan meal and that Defendant's motion for summary judgment should be granted on those claims. However, dismissal based on lack of exhaustion of Plaintiff's other claims is unwarranted.  Plaintiff's assertions that he was prevented from completing exhaustion on his claims concerning a paid Muslim chaplain and secure place to pray are supported by the record, and Defendant's only argument on the matter is not.

11

**B.      Plaintiff's Claim Concerning a Muslim Chaplain**

**1.      Defendant's Statement of Undisputed Facts and Argument**

Defendant states that it is undisputed (1) that the DeKalb County jail relies on clergy volunteers to minister to inmates' religious needs and (2) that Plaintiff admitted in his deposition that two Muslim Imams visited the jail during his incarceration.[6] (Doc. 35, Defendant's Statement of Undisputed Material Facts ¶¶ 6, 7, 10).[7] Defendant argues that it does not offend the Constitution to have one full-time Christian chaplain who relies on volunteer clergy to serve inmates' different religious needs. (Doc. 35, Br. at 8-10). Defendant argues that Plaintiff's argument would require the jail to hire a paid Muslim cleric for each of the many Islamic denominations and that the jail cannot do that as it needs to control its operating costs. (Id. at 9).

_____

[6]Plaintiff in his deposition stated that the paid chaplain, Chaplain Crocker, is a Christian; that one Imam had visited the jail and then was stopped from coming to the jail; and that one time he saw another Imam in the jail, Furqam Muhammad. (See Doc. 39 at 19, 22-23, 34-35). Defendant states no undisputed fact as to the number of times that an Imam visited the jail, whether it was one or two visits, or more.

[7]Defendant's remaining "undisputed facts" regarding volunteer Muslim clergy and the number of denominations within the Islamic religion, (Doc. 35, Defendant's Statement of Undisputed Material Facts ¶¶ 7-11), do not inform the issue of whether the Constitution allows the jail to retain a paid Christian chaplain but not a paid Muslim chaplain.

AO 72A
(Rev.8/82)

### 2.    <u>Plaintiff's Response</u>

Plaintiff replies that if Christian inmates are provided a paid Christian chaplain, Muslim inmates should be provided a paid Muslim chaplain. (Doc. 40 at unnumbered pages 11-12). Plaintiff further states that Furqam Muhammad did not come to the prison until November 2011, after Plaintiff filed this action, and that while he was in the DeKalb County Jail from November 1, 2010, until December 3, 2011, he never enjoyed the right to Jummah Service (a matter apparently affected by the lack of a Muslim chaplain or volunteer Imam). (<u>Id.</u>).

### 3.    <u>Recommendation</u>

As discussed by the Court in its initial Report and Recommendation, (<u>see</u> Doc. 15 at 14-15), although prison officials "need not employ chaplains of each and every faith to which prisoners might happen to subscribe, [they] may not discriminate against minority faiths except to the extent required by the exigencies of prison administration." <u>Johnson-Bey</u>, 863 F.2d at 1312. (<u>See</u> Doc. 15 at 11-13).

> We do not suggest, of course, that every religious sect or group within a prison - however few in number - must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable op[p]ortunities must be afforded to all prisoners to exercise the religious

13

freedom guaranteed by the First and Fourteenth Amendment without fear
of penalty.

Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).  Although "[v]alid disciplinary and security reasons not known to [the] court may prevent the equality of exercise of religious practices in prison[,]" id. at 321 (internal quotation marks omitted) (quoting Cruz v. Beto, 329 F. Supp. 443, 446 (S.D. Tex. 1970)), it is improper to dismiss a First/Fourteenth Amendment claim without any fact finding regarding the state's actual justification for the contested practice.  Saleem v. Evans, 866 F.2d 1313, 1316-17 (11th Cir. 1989) ("We will not assume that the warden's interest in denying [the plaintiff] the opportunity to observe Ramadan in December was legitimate, compelling and substantial without any allegations or evidence to support such a finding." (attaching/quoting Diaab v. Green, No. 85-8351 (11th Cir. June 11, 1986))).[8]

The parties do not dispute that the Jail's one paid chaplain is a Christian and that the Jail depends on volunteer Imams to meet Muslim inmates' religious needs.  In allowing Plaintiff's claims to proceed, the Court emphasized that it did not know the

_____

[8]The Eleventh Circuit has cautioned – "[b]ecause a court holds that certain prison officials demonstrated a substantial interest justifying interference with a certain religious practice at a certain institution at a certain time, does not logically compel us to conclude that an inmate who alleges interference with the same practice at a different institution at a different time has failed to state a claim under the First Amendment."  Saleem, 866 F.2d at 1317 (attaching/quoting Diaab).

14

Jail's administrative or other concerns as they relate to the lack of a paid Muslim chaplain. The Court still does not. In moving for summary judgment, Defendant presents nothing regarding the DeKalb County Jail's administrative/security concerns or the extent of the demand for a Muslim chaplain, which may, or may not, justify the apparent inequality between providing a paid Christian chaplain while allowing only volunteer Muslim Imams (which appears sporadic).[9] The Court makes the *limited* finding that Defendant's argument fails to show that he is entitled to summary judgment on Plaintiff's claim concerning a paid Muslim chaplain.

### C.   Plaintiff's Claim Concerning a Secure Place to Pray

#### 1.   Defendant's Statement of Undisputed Facts and Argument

Defendant states that it is undisputed that the mezzanine level is a prohibited area to inmates and that Plaintiff never asked that he be able to use the multi-purpose room for Muslim prayer. (Doc. 35, Defendant's Statement of Undisputed Material Facts ¶¶ 13, 15). Defendant argues that the Constitution does not require the prison to allow prayer in a prohibited area, "to provide an **optimal** place" to pray, or to

---

[9]Defendant's assertion that the jail cannot control its operating costs if it honors Plaintiff's request, which Defendant transforms into a request for numerous paid Muslim clerics, does not address the jail's administrative or security concerns in providing a paid Muslim chaplain.

15

provide a place to pray that is free "from **any** interruptions or distractions[.]" (Id., Br. at 11-12 (emphasis in original)).

### 2.      Plaintiff's Response

Plaintiff replies that he "would be sure that [the Administration] would come up with a compelling Government interest" if he asked to use the multi-purpose room for daily prayer. (Doc. 40 at unnumbered page 16). Plaintiff again asserts that it offends the Constitution to deny Muslims a secure place to pray when a secure place to pray is offered to Christians. (Id. at 17).

### 3.      Law and Recommendation

A fair reading of Plaintiff's claim does not allow it to be parsed and dismissed as an overreaching or unrealistic claim that he has a right to pray in a prohibited area or to a place to pray that is free "from **any** interruptions or distractions[.]" (Doc. 35, Br. at 11-12 (emphasis in original)). Plaintiff's grievances adequately communicated that he sought a secure and quiet place – similar to the multi-purpose room offered to Christians – in which he could participate in Muslim prayer. As discussed by the Court in its initial Report and Recommendation, (1) prison officials may not impinge on the free exercise of sincerely held religious beliefs unless their actions/restrictions are reasonably related to legitimate penological interests and (2) it is improper to

16

dismiss a First/Fourteenth Amendment claim without any reference to the state's justification for its impingement on the prisoner's religious rights. (See Doc. 15 at 11-13). In allowing Plaintiff's claims to proceed, the Court emphasized that it did not know the Jail's administrative or security concerns as they relate to a secure place for Muslim inmates to pray. The Court still does not. Defendant presents nothing regarding the DeKalb County Jail's administrative/security concerns or the extent of the demand as related to Plaintiff's request for a secure place for Muslims to pray. Accordingly, the Court makes the *limited* finding that Defendant's argument fails to show that he is entitled to summary judgment on Plaintiff's claim concerning a place to pray.

## III. Conclusion

**IT IS RECOMMENDED** that Defendants' motion for summary judgment, (Doc. 35), be **GRANTED** on Plaintiff's claims concerning the wearing of a kufi and concerning the celebration of an end-of-Ramadan meal and otherwise be **DENIED**.

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule 72.1, and Standing Order 08-01 (N.D. Ga. June 12, 2008). The Clerk, therefore, is **DIRECTED** to terminate the reference to the Magistrate Judge.

AO 72A
(Rev.8/82)

**IT IS SO RECOMMENDED and DIRECTED** this 5th day of September, 2013.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

18